ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| RENÉ JAVIER GONZÁLEZ MARTÍN<br><br>Recurrente<br><br>v.<br><br>VIDRIOS, INC.<br><br>Recurrido | TA2025RA00325 | Revisión Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2023-0012960<br><br>Sobre: Contrato de obras y servicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 26 de febrero de 2026.

Comparece ante nos el señor René Javier González Martín (la parte recurrente) mediante *Recurso de Revisión* y nos solicita la revisión de una Resolución emitida y notificada el 29 de agosto de 2025 por DACo. Mediante el referido dictamen, la agencia administrativa concluyó que no procedía la resolución de un contrato de obras y servicios.

Por los fundamentos que expondremos, *confirmamos* el dictamen recurrido.

**I**

La controversia ante nuestra consideración inició el 4 de enero de 2023, cuando el señor René Javier González Martín radicó una *Querella*[1] en DACo sobre contrato de obra y servicios contra la corporación Vidrios, Inc. (la parte recurrida). En síntesis, el señor González alegó que contrató los servicios de la corporación mediante un contrato de obras y servicios otorgado alrededor de agosto de 2020. El mismo consistía en realizar instalación de puertas, ventanas y otras estructuras de seguridad

---

[1] Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Anejo 1.

contra huracanes en una propiedad ubicada en Luquillo, Puerto Rico (la propiedad). Sostuvo que la parte recurrida incumplió con el contrato otorgado ya que los trabajos realizados, a su juicio, fueron deficientes, defectuosos, y quedaron incompletos, entre otras deficiencias señaladas. A tenor, solicitó que se inspeccionara la propiedad y se ordenase a la corporación a rehacer los trabajos conforme a lo contratado.

Por su parte, el 24 de enero de 2023, compareció Vidrios Inc. mediante *Contestación de la Querella*.[2] Sostuvo que no procedía la reclamación de la parte recurrente ya que la obra había sido completada conforme a lo acordado. Asimismo, instó una reconvención en la cual manifestó que el caso de autos era más bien sobre incumplimiento de pago por parte del recurrente. A tenor, solicitó a la agencia administrativa que declarase *No Ha Lugar* la querella instada y que ordenase al recurrente el pago de cuarenta y cinco mil doscientos veinte dólares ($45,220.00) en virtud de que la obra había sido culminada.

El 16 de abril de 2024, un técnico de investigación de DACo realizó una inspección de la obra y emitió un *Informe de Inspección*.[3] El referido informe fue notificado a las partes el 24 de junio de 2024 mediante *Notificación de Informe de Inspección*.[4] Posteriormente, el 3 de septiembre de 2024 con notificación el 4 de septiembre de 2024, la agencia administrativa emitió una *Resolución*[5] ordenando el cierre y archivo de la querella por la incomparecencia de la parte recurrente a una vista administrativa citada en esa misma fecha. Por consiguiente, el 16 de septiembre de 2024, el señor González compareció mediante *Moción de Reconsideración*,[6] fundamentando las razones de su incomparecencia, solicitando a la agencia administrativa que dejase sin efecto la referida resolución y que ordenase la continuación de los trámites de la querella. Así pues, el 26 de septiembre de 2024, la agencia administrativa emitió una

---

[2] SUMAC TA, a la Entrada Núm. 1, Anejo 24.
[3] *Id.,* al Anejo 23.
[4] *Id.,* al Anejo 22.
[5] *Id.,* al Anejo 21.
[6] *Id.,* al Anejo 19.

*Resolución en Reconsideración*[7] dejando sin efecto su previa resolución y citando a las partes para una vista administrativa.

La vista administrativa en su fondo se celebró el 7 de mayo de 2025. El 29 de agosto de 2025, DACo emitió *Resolución*[8] y determinó que no procedía la resolución del contrato según solicitada. Sin embargo, concluyó que, conforme a lo identificado en el informe de inspección, procedía que la parte recurrida corrigiese y completase las terminaciones de la obra. Asimismo, en el referido dictamen la agencia administrativa realizó las siguientes determinaciones de hechos:

1. La parte querellante se identifica como René Javier González Martín, mayor de edad residente del municipio de San Juan y con dirección postal de récord en: Calle 9 K-2 El Mirador de Cupey, San Juan, P.R. 00926.
2. La parte querellada se identifica como Vidrios, Inc. (en adelante, parte querellada o Vidrios), entidad autorizada a realizar negocios en la jurisdicción de Puerto Rico y con dirección postal de récord en: 600 Boulevard de la Montaña #521, San Juan, P.R. 00926.
3. Durante la vista administrativa celebrada se admitieron en evidencia y se marcaron como Exhibits los siguientes documentos:

   a. Escritura de compraventa. Exhibit #1.
   b. Factura #2233-20. Exhibit #2.
   c. Conduce #2895. Exhibit #3.
   d. Conduce #3054. Exhibit #4.
   e. Cheque #0050. Exhibit #5
   f. Cheque #1076. Exhibit #6
   g. Factura #3122-21. Exhibit #7.
   h. Dibujos (4-agosto-2020). Exhibit #8.

4. En o alrededor del mes de agosto de 2020, las partes acordaron un contrato de obras a ser realizado por la parte querellada, en una propiedad de la parte querellante localizada en Hacienda Carabalí, sita en el municipio de Luquillo, Puerto Rico.
5. La obra consistía en realizar, entre otros, lo siguiente: fabricación e instalación de marcos de aluminio pintados en color negro mate con cristales laminados 5/16", instalación de puertas corredizas con paños fijos encima de estas; instalación de puertas de pivotes giratorios en el baño principal (master room), cristales templados de 1/" para duchas, cristales templados con base tipo canal arriba y abajo para área de comedor, ventanas corredizas para el "counter" de la cocina, puerta de aluminio, cristal "full glass" para la entrada de cocina, puertas corredizas para el área del garaje

---

[7] *Id.*, al Anejo 18.
[8] *Id.*, al Anejo 18.

en la parte inferior de la residencia, barandas en cristal templado con base de 4"; construcción e instalación de puertas corredizas tipo "ultra heavy" para la sala, "family room", cocina, habitación "master", habitación de visita, marquesina y espacio al lado del garaje (parte debajo de la casa), puertas incluirían "handles" y cerraduras para manejo y control de las mismas; trabajos de remodelación en baño de visita, suplir e instalar barandas con cristales de ½ pulgada y "handrail en la parte debajo de la residencia, entre otros.

6. Luego de la cotización inicial, las partes acordaron realizar unos trabajos adicionales. Entre algunos de los trabajos adicionales a los originalmente pactados se encuentran los siguientes: extensión de baranda desde columna de la residencia hasta la escalera de la puerta principal, instalación de cubiertas (claddings) en alumino pintados color negro mate, instalación de puerta adicional y ventanas "casement", barandas de balcón, y cristal en baño de visita y cubiertas nuevas (claddings) al frente del área de la cocina.

7. La cuantía acordada por la obra fue de $89,620.00, incluyendo los trabajos adicionales a los originalmente pactados.

8. La parte querellante pagó la cantidad de $55,000.00 a la parte querellada por los trabajos realizados.

9. En o alrededor del mes de agosto de 2021, la parte querellante le realizó una serie de reclamaciones a la parte querellada durante una visita a la residencia relacionadas con lo siguiente: terminaciones sin completar, limpieza de cristales, que el grosor de los cristales era menor al 5/16" acordados y que los cristales instalados no eran a prueba de huracanes. La parte querellada negó que el cristal no fuese del grosor ni la calidad acordada. Producto de la discusión entre las partes, la parte querellante expulsó a la parte querellada de la residencia y le indicó que no se presentara más al proyecto.

10. La obra fue completada dentro de un tiempo razonable, tomando en cuenta el tiempo estimado de ocho (8) a diez (10) meses acordados entre las partes y los cambios de órdenes que hubo en la obra.

11. La obra contaba con un arquitecto y un diseñador de interiores contratados por la parte querellante, quienes además de tener tareas específicas y obligaciones distintas para con el querellante, realizaban recomendaciones a la parte querellante y labores de supervisión en general.

12. El día 16 de abril de 2024 un Técnico de Investigación del DACO (en adelante, Inspector) realizó una inspección en la residencia objeto de la querella. El Inspector incluyó, en lo pertinente, lo siguiente en su informe: "(1) Puerta de entrada al área de la cocina muestra tomillos de agarre del marco sobresalidos,

marco que sujeta cristal muestra exceso de silicón aplicado;(2) "Slidding doors" de la parte frontal de la residencia muestra burlete desprendiéndose, exceso de silicón en borde inferior derecho, riel inferior muestra tornillos instalados tipo "tapcon" como anclaje.(3) "Slidding door" lateral izquierdo no refleja desperfecto funcional alguno, Querellante manifiesta no estar conforme con su diseño;(4) "Slidding door" trasero derecho no refleja desperfecto funcional alguno. Cubre falta externo pegado a la columna muestra "gap" de aproximadamente 1 pulgada donde encaja la puerta al marco inferior; (5) "Slidding door" en área de la sala muestra "gap" de aproximadamente ½ pulgada en zócalo inferior de la pared donde conecta el marco de la puerta, la cual pudiera permitir entrada de agua al interior. Se observa burlete fuera de lugar;(6) Vitral colocado en el comedor muestra una separación entre los cristales, tanto superior como inferior, la cual pudiera permitir entrada de agua al interior de la residencia;(7) Cuarto dormitorio núm. 2 muestra "slidding door sin desperfecto funcional, solo que los tornillos utilizados en el anclaje del riel muestran moho. El baño muestra cúmulo de agua leve en borde inferior de la ducha; (8) Cuarto dormitorio principal muestra "slidding doors" cortas, no llegan hasta el final del marco y no se les puede aplicar el seguro. En el baño se observa que "slidding door" le falta colocar chapa para centralizar la cerradura, falta colocar chapa en el piso para centralizar anclaje de cierre y falta colocación de mangos de agarre para poder abrir y cerrar la misma; (9) En el patio se observa marcos que soportan los cristales que sirven de barrera fuera de sitio, gomas aislantes de soporte a los cristales despegadas y/o colapsadas, cubre falta superior que a su vez sirve de barandal se observa en varios lugares despegado y/o desprendido; (10) Fachada externa fue modificada por el querellante al añadir tubos de soporte en varios lugares a lo largo del barandal en área de la piscina y áreas adyacentes; (11) Puertas "slidding doors" localizadas en un cuarto de juegos debajo de la piscina muestra cúmulo de sedimentación dentro de los rieles, lo cual dificulta de desplace la misma y sea dificultoso abrir y cerrar; (12) Estructura superior, desconectada de la planta baja y con acceso aparte muestra puerta de entrada abre y cierra con dificultad y con descuadre en su montura; (13) Vitral colocado en el área del baño muestra exceso de silicón aplicado alrededor del marco y tornillos de agarre con moho; (14) Barandal externo en la escalera que conduce hacia la estructura fue modificada por el querellante para añadir tubos de soporte adicional."

13. El informe de inspección emitido no fue objetado por ninguna de las partes por lo cual el mismo pasó a ser

estipulado y parte integral del expediente administrativo conforme la Regla 15.2 y 15.3 del Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 8034 de 2011.

14. Al momento de la parte querellante expulsar de la obra a la parte querellada y solicitarle que no regresara más al proyecto, la obra estaba sobre un 90% completada y solo faltaban varias tareas por completarse, particularmente labores de terminación y limpieza.

15. A pesar de que a la obra le faltaban labores de terminación y limpieza por completarse, el uso y disfrute de la propiedad por la parte querellante no ha sido interrumpido.

16. El grosor del cristal instalado en la residencia es de 5'16", en cumplimiento con lo acordado entre las partes.

17. Un cristal descrito como "cristal huracanado" no significa que es un cristal "a prueba de huracanes".

18. Los dibujos relacionados a la obra en cuanto a grosor del cristal, medidas, instalación y diseño fueron realizados por la parte querellada y aprobados por la parte querellante.

19. La obra, tal como fue entregada, no representa peligro de salud y seguridad a la parte querellante.

20. Los defectos reflejados por la obra al momento de la inspección son defectos corregibles y no representan incumplimiento contractual o vicio redhibitorio entre las partes.[9]

Inconforme con el dictamen de la agencia administrativa, el 18 de septiembre de 2025, el señor González compareció ante DACo mediante *Moción de Reconsideración*.[10] En síntesis, reiteró que la obra presentaba deficiencias que ponían en riesgo a su familia y a la propiedad. A tenor, solicitó que la agencia administrativa declarase la resolución del contrato y la devolución de las prestaciones o, en su defecto, redujese el precio de la obra a lo ya pagado. Transcurrido el término otorgado en ley para que la agencia emitiera su decisión en cuanto a la reconsideración, la misma no se expresó.

El 3 de noviembre de 2025, el señor González acude ante nos mediante un *Recurso de Revisión*,[11] y esgrime tres (3) señalamientos de error cometidos por la agencia administrativa, a saber:

Cometió grave error el DACo al formular las determinaciones de hechos ya que las mismas no se encuentran apoyadas por

---

[9] *Id.*
[10] SUMAC TA, a la Entrada Núm. 1, Anejo 4.
[11] SUMAC TA, a la Entradas Núm. 1 y 3.

la evidencia en el récord administrativo, ni por la evidencia testimonial y menos aún por la evidencia pericial, por lo tanto, las mismas son arbitrarias, caprichosas e ilegales.

Cometió grave error el DACo en la formulación de sus conclusiones de derecho al haber condonado la violación al Código de Construcción de Puerto Rico y al haber determinado que la obra podía ser reparada y que no procedía la resolución contractual.

Cometió grave error el DACo en este caso al no haber demostrado pericia alguna en la materia de cristales y vidrios y en haberse negado a aplicar el Código de Construcción de Puerto Rico.

El 6 de noviembre de 2025, emitimos una *Resolución*[12] concediéndole a la parte recurrida hasta el 5 de diciembre de 2025 para presentar su alegato. Posteriormente, el 13 de noviembre de 2025, el recurrente compareció mediante *Moción en Solicitud de Reproducción de Prueba Oral Bajo la Regla 76 del Reglamento de este Honorable Tribunal de Apelaciones*.[13] Conforme a lo anterior, el 14 de noviembre de 2025 emitimos una *Resolución*[14] concediéndole a DACo hasta el 21 de noviembre de 2025 para emitir la regrabación de la vista administrativa. Asimismo, le concedimos al recurrente hasta el 19 de diciembre de 2025 para someter la Transcripción de la Prueba Oral Estipulada (TPOE). Tras varios trámites procesales, el 30 de diciembre de 2025, compareció el recurrente emitiendo la *Regrabación.*[15] Consecuentemente, el 17 de enero de 2026, compareció el recurrente mediante *Alegato Suplementario*.[16] Transcurridos los términos sin la comparecencia de la agencia administrativa, procedemos a resolver.

**II**

**A.**

La *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA 9601, *et seq.* (LPAU), establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. En lo pertinente, la Sección 4.2 de la LPAU dispone lo siguiente:

---

[12] SUMAC TA, a la Entrada Núm. 4.
[13] SUMAC TA, a la Entrada Núm. 6.
[14] SUMAC TA, a la Entrada Núm. 7.
[15] SUMAC TA, a la Entrada Núm. 13.
[16] SUMAC TA, a la Entrada Núm. 14.

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […] 3 LPRA sec. 9672.

Las facultades adjudicativas de una agencia administrativa están regidas por la *Ley de Procedimiento Administrativo Uniforme*, *supra*, y por la jurisprudencia interpretativa.  En términos sustantivos y procesales, se ha resuelto que los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. *Graciani Rodríguez v. Garage Isla Verde, LLC.*, 202 DPR 117, 128-129 (2019).  Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia.  *Rebollo v. Yiyi Motors*, 161 DPR 69, 77-78 (2004).

El alcance de la revisión judicial de las decisiones administrativas conforme la Sección 4.5 de LPAU, 3 LPRA sec. 9675, se limita a determinar si el remedio brindado por la agencia es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo y si las conclusiones de derecho son correctas mediante una revisión completa.  Véase, además, *P.R.T.Co. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

Respecto a las determinaciones de hechos, la Sección 4.5 de la LPAU, *supra*, dispone específicamente que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."  El concepto de evidencia sustancial consiste en "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".  *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012).  Por otro lado, la Sección 4.5 de la LPAU, *supra*,

dispone que las conclusiones de derecho "…serán revisables en todos sus aspectos por el tribunal".

**B**.

Es norma asentada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Al momento de "revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia". *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Luego, "[e]n caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener la que seleccionó la agencia, y no sustituir su criterio por el de esta". *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). A su vez, "[e]l expediente administrativo constituirá la *base exclusiva* para la decisión de la agencia en su procedimiento adjudicativo y para la revisión judicial ulterior". *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9675, establece el alcance de la revisión judicial de una determinación administrativa, como sigue:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Se ha pautado por el Tribunal Supremo de Puerto Rico que "**los procesos administrativos y las determinaciones de hechos de las agencias est[á]n cobijados por una presunción de regularidad y corrección**", por lo que "la revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de manera arbitraria, caprichosa o ilegal". (Énfasis nuestro.) *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Es decir, si quiere

prevalecer**,** la parte recurrente está obligada a presentar la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006). En ese sentido, la parte que recurre judicialmente una decisión administrativa tiene el peso de la prueba para demostrar que las determinaciones de hechos no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. *Rebollo v. Yiyi Motors*, *supra,* a la pág. 77. La presunción de corrección de la decisión administrativa cederá en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Acerca de la interpretación de los estatutos que ejecutan las agencias, aun cuando las conclusiones de derecho se revisan en todos sus aspectos, los tribunales no podemos descartar libremente las conclusiones e interpretaciones de la agencia. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009), que cita a *Martínez v. Rosado*, 165 DPR 582 (2005). "Igualmente, **merece gran deferencia y respeto la interpretación razonable de un estatuto que hace el organismo que lo administra** y del cual es responsable". (Énfasis nuestro.) *Id.* El Tribunal Supremo de Puerto Rico ha opinado que incluso en casos dudosos, en los que la interpretación de la agencia no sea la única razonable, la determinación de esta merece deferencia sustancial. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Esta deferencia solo cederá cuando la decisión afecte derechos fundamentales, resulte irrazonable o conduzca a la comisión de una injusticia. *Costa, Piovanetti v. Caguas Expressway*, 149 DPR 881, 889 (1999), refrendado en *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*; *Com. Seg. P.R. v. Antilles Ins. Co.*, 145 DPR 226, 233 (1983).

**C.**

Como es sabido, los contratos representan la ley entre las partes y nuestro ordenamiento les sujeta a aquellos que contravienen sus obligaciones a la indemnización por los daños causados. Artículo 1054 del Código Civil de Puerto Rico de 1930, según derogado, 31 LPRA sec. 3018. Este tipo de acción procede cuando hubo un acuerdo de voluntades que generó una obligación el cual fue quebrantado. En el caso de las obligaciones recíprocas, el perjudicado del incumplimiento retiene la facultad implícita para resolver el contrato. 31 LPRA sec. 3052. Ante el escenario del incumplimiento de una obligación bilateral puede optarse por exigir su cumplimiento o su resolución. Cuando se trata del cumplimiento parcial o defectuoso de una obligación, únicamente procede la resolución del contrato cuando "implica la frustración de la finalidad" de este. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). En estos casos de ordinario lo que procede es el cumplimiento total y una reducción proporcional del precio. *Id.*, a la pág. 21.

En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto*, supra*, 31 LPRA sec. 4013. Véase también, *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616, 623 (2000). El contrato de obras es "esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos". *Constructora Bauzá, Inc. v. García*, 129 DPR 579, 592 (1991). El contrato de obra es uno de carácter consensual, bilateral, y oneroso cuyos elementos característicos son la obra por realizarse y el precio. *Id.* En un contrato de obra, el dueño de la obra tiene la obligación fundamental de pagar el precio de ésta en la forma, en la cuantía y en el tiempo convenido, mientras que el contratista, por su parte, tiene la obligación de realizar y entregar la obra según lo pactado. *Master Concrete Corp. v. Fraya, S.E.*, *supra*.

### III

En el caso ante nuestra consideración, el señor González Martín nos solicita la revisión de una determinación emitida por DACo y nos plantea tres señalamientos de error presuntamente cometidos por la agencia administrativa. Por la naturaleza de los errores, estos serán discutidos de manera conjunta. El recurrente sostuvo que DACo cometió grave error: (i) al formular determinaciones de hechos que no se encontraban apoyadas por la evidencia en el récord administrativo y que las mismas eran arbitrarias, caprichosas e ilegales; (ii) en la formulación de sus conclusiones de derecho al haber condonado la violación al Código de Construcción de Puerto Rico y determinar que la obra podía ser reparada y que no procedía la resolución contractual y, (iii) al no haber demostrado pericia alguna en la materia de cristales y vidrios.

De un examen del expediente administrativo se desprende que la agencia fundamentó su determinación en un *Informe de Inspección* preparado por un perito de DACo, tras realizar una inspección de la obra objeto de esta controversia. El aludido informe identificó determinadas deficiencias en la obra, las cuales no fueron objeto de impugnación por las partes. Consecuentemente, la agencia concedió a la parte recurrida un término para subsanarlas. No obstante, a pesar de las deficiencias señaladas, surge de los autos que la obra se encontraba sustancialmente completada, quedando pendientes únicamente labores de terminación y limpieza.

Es norma reiterada que la resolución de un contrato por el cumplimiento parcial o defectuoso de la obligación solo procede cuando dicho incumplimiento "implica la frustración de la finalidad." *Álvarez v. Rivera*, *supra*. A la luz del expediente, no surge que el uso y disfrute de la propiedad se haya visto interrumpido ni que la obra represente riesgo alguno para la salud ni la seguridad del recurrente. Asimismo, conforme surge de la TPO, tanto el perito de la agencia administrativa como el perito presentado por el propio recurrente, coincidieron en que las medidas de los

cristales instalados en la propiedad se ajustaban a lo pactado por las partes. Siendo ello una de las alegaciones medulares del señor González para sustentar la resolución contractual interesada, concluimos que del expediente no se desprende prueba que justifique la concesión de tal remedio.

Resulta menester reiterar que, al ejercer nuestra función revisora, debemos conceder amplia deferencia a las decisiones de las agencias administrativas, en consideración a su pericia y su conocimiento especializado en los asuntos que les han sido encomendados. En consecuencia y en la mayor medida posible, debemos abstenernos de intervenir con las determinaciones de hecho realizadas por las agencias. En vista de lo anterior, la parte recurrente está obligada a presentar la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. *Camacho Torres v. AAFET, supra.* Tras un examen minucioso del expediente administrativo ante nuestra consideración, así como el recurso de revisión judicial presentado, nos vemos precisados a concluir que el recurrente no demostró la existencia de prueba en el expediente que justificara una adjudicación distinta a la realizada por la agencia. Por lo cual, no tienen méritos sus planteamientos.

**IV**

Por los fundamentos que anteceden, se confirma la determinación recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones